IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 06 C 7157 |
| v. | ) ) | Judge Virginia M. Kendall |
| NEAL A. REDDY; and ROYANNE REDDY; each individually and d/b/a ROYANNE'S TAX SERVICES and ROYANNE & COMPANY, INC., | ) ) ) ) ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff United States of America's Motion for Preliminary Injunction against Defendants Neal A. Reddy ("Neal"); Royanne Reddy ("Royanne" and together with Neal, "the Reddys"); Royanne's Tax Services and Royanne & Company, Inc. (together with Royanne's Tax Services, "the Company"). The government seeks a preliminary injunction against the Reddys and the Company barring them from "directly or indirectly acting as federal tax return preparers, representing any person before the Internal Revenue Service, and engaging in any conduct subject to any penalty under the Internal Revenue Code or any other conduct that interferes with the administration and enforcement of the internal revenue laws." (Mtn. for Preliminary Injunction at p. 1). The government also asks that the Defendants be required to notify their customers of this Court's findings and of any injunction this Court may enter. The Court held a hearing on the government's Motion on May 1, 2007. For the reasons set forth in this Opinion, the Court grants the government's Motion for Preliminary Injunction.

**Findings of Fact**[1]

Royanne is the sole owner of Royanne & Company, Inc., which is located in Marseilles, Illinois. Royanne has been a federal income tax preparer since 1978. Her husband, Neal, began preparing tax returns in 2002. The Reddys, individually and/or doing business as Royanne's Tax Services, prepare federal income tax returns for others for compensation. Tax return preparation amounts to approximately 70 - 80% of the Company's business. The remainder of the Company's business – bookkeeping – amounts to a "small allowance" during "the other nine months of the year."

The Reddys and the Company prepared more than 15,000 tax returns between 2002 and 2005. Each of those returns was prepared by Royanne, Neal, or one of the Company's several other income tax preparers who are supervised primarily by Royanne.

In March 2003, the IRS conducted an undercover investigation of the Company. Special Agent David Guest ("Agent Guest") visited the Company in an undercover capacity and met with Royanne. During that meeting, Royanne prepared a 2002 Form 1040 and an amended 2001 Form 1040 for Agent Guest. Agent Guest testified at the hearing – consistent with his declaration submitted in support of the government's Motion – that the returns prepared by Royanne contained several overstated or improper deductions.

Agent Guest wore a hidden recording device when he met with Royanne. The recording of their conversation suggests that certain of the errors on the returns Royanne prepared for Guest were not accidental. Agent Guest told Royanne that he spent $110 per month for a train pass. Royanne

---

[1]The facts presented in this Opinion are taken from the testimony at the hearing held on the Motion and from the affidavits and declarations submitted by the parties.

based the commuting expenses she reported on Guest's return on a $110 per *week* basis instead of the $110 per month Guest reported having spent. When Guest asked whether the IRS would catch that inaccuracy, Royanne told him that the IRS would not. However, she suggested that he should change the deduction to mileage expenses instead of train expenses, advising Guest, "you can say you drive; they don't make you prove you drove."

Tax Compliance Officer Christine Kingman ("Kingman") testified at the hearing that in 2004, the IRS examined 72 income tax returns prepared by the Reddys and the Company.[2] All of the examined returns contained errors and required adjustments to the filer's tax liability. Sixty-five of the 72 returns examined claimed deductions for employee business expenses; 64 of those returns claimed deductions that the IRS determined to be unsubstantiated or improper. Also among the returns examined were 35 returns that reported profit or loss from business on Schedules C. All of those Schedules C improperly reported either gross receipts or expenses or both. Completing the audits of 72 income tax returns prepared by the Reddys and the Company took approximately one year.

In support of its Motion, the government submitted the declaration of Revenue Agent Boutros Chlimon ("Chlimon"), who testifies that the assessed deficiency per return for the examined returns was approximately $2,423. The actual total assessed tax loss for the examined returns was $174,516. Chlimon's declaration notes that a "conservative estimate" of the tax loss to the IRS as a result of returns prepared by the Reddys between 2002 and 2005 is $13.31 million.

---

[2]Kingman's testimony at the hearing was consistent with the affidavit submitted in support of the government's Motion.

The government also presented the testimony of former employees of the Company – both at the hearing and by declaration – indicating that Royanne directed the Company's employees to fabricate or inflate deductions in order to generate larger refunds for the Company's customers. Former employee Katherine Baxter ("Baxter") testified at the hearing that Royanne instructed her to "make up Schedule C businesses to show a loss so they can generate a bigger refund." Baxter also testified that Royanne offered instructions on methods Company employees were to adhere to in order to avoid IRS audits, such as "don't ever use round numbers" because round numbers are a "red flag" and "try to keep [reported mileage deductions] realistic within the salary amount, you know, whatever the client's income was, try to keep it within a realistic amount there." Baxter further testified that she had observed Royanne reporting fabricated business expenses on her clients' returns.

Another former Company employee, Jamie Wolf ("Wolf"), testified in a declaration that Royanne told her to avoid using round numbers to lessen the chances of an IRS audit. Wolf observed Royanne, on several occasions, preparing returns that falsely reported income from child-care businesses in order to increase an Earned Income Tax Credit for the filer. Wolf stated that Royanne asked clients whether they ever babysat during the year and if the customer replied affirmatively, Royanne would attach a Schedule C reporting thousands of dollars of income from a child-care business.

At the hearing, Royanne testified generally that errors on returns prepared by the Company were the result of a high volume of work that made adequate supervision of Company employees impossible. Royanne testified that she has scaled back her operation in order to allow more time to supervise her employees. Both Neal and Royanne denied fabricating or intentionally inflating

4

deductions. On cross-examination, Royanne admitted that the returns she prepared for Agent Guest were inaccurate but testified that she did not intentionally misrepresent Agent Guest's expenses. With respect to deductions claimed for Agent Guest's travel expenses, Royanne offered the highly implausible explanation that she believed the tax code permitted Agent Guest to take a mileage deduction even if he was part of a car pool, or if he did not drive to work at all. Royanne further testified on re-direct that certain of her mistakes were the result of "misconceptions" of certain provisions of the tax code or of taking certain of those provisions "out of context."

The Court finds it more likely that errors identified by the IRS on returns prepared by the Reddys and the Company were the result of, in some cases, negligence, and in most cases, deliberate efforts to understate clients' tax liabilities, including deliberate efforts to overstate or completely fabricate certain deductions. The Court makes this credibility determination based on its observation of the witnesses and their testimony, including their demeanor, at the hearing held on the government's Motion.

**Standard**

In order to obtain a preliminary injunction, a movant must ordinarily make a clear showing that "(1) [the movant has] a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) [the movant] will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Goodman v. Illinois Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). However, in cases such as this one, in which "an injunction is expressly authorized by statute, the standard preliminary injunction test is not applied." *United States v. Webb*, No. 06-CV-5317, 2007

U.S. Dist. LEXIS 7307, *4 (E.D.N.Y. Jan. 31, 2007) (quoting *United States v. Broccolo*, No. 06-CV-2812, 2006 U.S. Dist. LEXIS 90241, *1 (S.D.N.Y. Dec. 13, 2006)). "In such cases, courts focus on the statutory conditions for injunctive relief, and may issue a preliminary injunction if such conditions are met. The movant need not show irreparable harm." *Id.* (internal quotations and citations omitted); *accord United States v. Kaun*, 827 F.2d 1144, 1148 (7th Cir. 1987) (reviewing issuance of injunction under 26 U.S.C. § 7408 and noting that "[i]n an action for a statutory injunction, once a violation has been demonstrated, the moving party need only show that there is a reasonable likelihood of future violations in order to obtain relief."); *United States v. Estate Preservation Services*, 202 F.3d 1093, 1098 (9th Cir. 2000); *United States v. Prater*, No. 8:02-cv-2052-T-23MSS, 2005 U.S. Dist. LEXIS 24952, *9 (M.D. Fla. Aug. 30, 2005) ("Because IRC §§ 7407 and 7408 set forth the criteria for injunctive relief, the United States need only meet those criteria, without reference to the traditional equitable factors, for an injunction to issue under these sections.").

In this case, the United States seeks an injunction pursuant to 26 U.S.C. §7407.[3] To obtain an injunction under Section 7407, the United States must demonstrate that: (1) the defendant is an "income tax return preparer" within the meaning of 26 U.S.C. § 7701(a)(36)[4]; (2) the defendant

---

[3] The government also seeks preliminary and permanent injunctions pursuant to 26 U.S.C. §§ 7402 and 7408. Because the entry of a preliminary injunction is proper under § 7407, it is not necessary for the Court to address §§ 7402 and 7408.

[4] 26 U.S.C. § 7701(a)(36) defines "income tax return preparer" as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax . . . or any claim for refund of tax imposed . . . [and] the preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return or claim for refund."

6

engaged in conduct described in 26 U.S.C. § 7407(b)(1)(A)-(D)[5]; and (3) injunctive relief is appropriate to prevent the recurrence of such conduct. *See* 26 U.S.C. § 7407. To determine whether an injunction is appropriate to prevent "the recurrence of such conduct," courts consider the likelihood of future violations. *Kaun*, 827 F.2d at 1148. "In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violation, including such factors as the gravity of the harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transaction[s]; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations. *Id.* at 1149-50 (quoting *S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982); *accord Webb*, 2007 U.S. Dist. LEXIS 7307 at *7 ("The Second Circuit has articulated several factors to be considered in assessing the probability of future infractions: (1) the degree of scienter involved, (2) the isolated or recurring nature of the fraudulent activity, (3) the defendant's appreciation of his wrongdoing, and (4) the defendant's opportunities to commit future violations."). Courts may enjoin a person from acting as an income tax preparer upon a finding that the person has continually or repeatedly engaged in any conduct described in 26 U.S.C. § 7407(b)(1)(A)-(D) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's

---

[5]The "conduct described in 26 U.S.C. § 7407(b)(1)(A)-(D)" includes, among other things: (1) understatements of a taxpayer's liability due to a position taken by the preparer for which there was not a realistic possibility of being sustained on its merits; (2) understatements of a taxpayer's liability due to a willful attempt in any manner (by the preparer) to understate the liability for tax; (3) a failure to be diligent in determining the eligibility for the earned income tax credit; and (4) engaging in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws.

interference with the proper administration of the Internal Revenue Code. *Gray*, 2007 U.S. Dist. LEXIS 19833 at *10-11 (citing 26 U.S.C. § 7407(b)).

**Analysis**

I.  **The Reddys and the Company Were Income Tax Preparers that Engaged in Conduct Described in 26 U.S.C. § 7407(b)(1)(A)-(D).**

The Court finds that the government has demonstrated that the Reddys and the Company are income tax return preparers within the meaning of 26 U.S.C. § 7701(a)(36). Royanne has admitted, both in her response to the government's Motion and at the hearing on that Motion, that she has prepared income tax returns for compensation. Royanne also testified at the hearing that the Company employs several persons to prepare tax returns for compensation, bringing the Company within the ambit of Section 7701(a)(36). Neal testified at the hearing that he worked for Royanne as an income tax preparer, but that he did not receive money or other material objects as payment for his services. However, when first asked by the Court whether he had been compensated in any way for the work he did for Royanne, Neal replied, "I'm married to the owner." The implication of Neal's answer is clear: he was indirectly compensated for preparing tax returns inasmuch as the work he did generated additional income for the owner of the business – his wife, Royanne – and, in turn, resulted in greater household income for the Reddys. Accordingly, the Court concludes that the government has demonstrated that Neal acted as an income tax return preparer under Section 7701(a)(36).

The Court further finds that the government has demonstrated that the Reddys and the Company have engaged in conduct described in 26 U.S.C. § 7407(b)(1)(A)-(D). Specifically, the Reddys and the Company have either negligently or willfully understated tax liability on returns they

prepared for their clients. As explained above, the IRS audited more than 70 returns prepared by the Reddys and the Company in 2004; every single one of those returns required adjustments. The audits revealed 64 returns that claimed deductions that the IRS determined to be unsubstantiated or improper and 35 returns that improperly reported either gross receipts or expenses or both on Schedules C. The audits, taken together with the testimony of Baxter and Wolf regarding the fabrication of business expenses on client returns, are compelling evidence that the Reddys and the Company willfully understated tax liability on returns they prepared for their clients.

The Defendants have offered no credible evidence that would indicate that the errors identified by the IRS in the audited returns were honest mistakes. Any credibility Royanne might have had in generally denying any improper conduct is thoroughly undermined by her recorded conversation with undercover Agent Guest, in which she – knowing full well that Guest did not drive to and from work – advised him that "you can say you drive; they don't make you prove you drove." In short, the Court agrees with the United States that "[a] 100-percent-error rate [in the 72 returns audited by the IRS] with an average of approximately $2,400 deficiency in tax per return is appalling. It cannot be dismissed as the product of loose controls or inadequate supervision. It is the product of design." (Reply in Support of Mtn. for Preliminary Injunction at p. 4).

II. **Injunctive Relief is Appropriate to Prevent the Reddys and the Company from Engaging in Such Conduct in the Future.**

Determining whether an injunctive relief is appropriate in this case to prevent the recurrence of the conduct described – at least for the duration of these proceedings on the government's complaint for permanent injunctive relief – requires the Court to assess the likelihood that the Reddys and the Company will continue to engage in that conduct absent entry of an injunction.

*Kaun*, 827 F.2d at 1148. The totality of the circumstances surrounding the conduct described above indicate that injunctive relief is warranted in this case to prevent further harm to the federal government and to Defendants' clients.

First, the harm caused by the Reddys and the Company in this case is serious: the IRS conservatively estimates that the tax loss resulting from returns prepared by the Reddys between 2002 and 2005 is $13.31 million. In addition, the government has been put to the considerable expense of conducting an undercover investigation of the Reddys and the Company and conducting more than seventy audits of tax returns prepared by the Reddys and the Company, which audits took approximately one year to complete.

With respect to scienter, the Court has found that the Reddys and the Company willfully overstated deductions and understated tax liability for their clients. This activity was recurring and not isolated. Among the returns prepared by the Reddys and the Company that were chosen for audit by the IRS, there was a 100 percent error rate. Conjointly, two former employees of the company have testified that it was tantamount to Company policy to inflate or fabricate business expenses to increase deductions or the amount of an earned income tax credit. Accordingly, the Court has little doubt that the Defendants' customary business activities might again involve them in such transactions.

Finally, the Court finds that the Reddys and, in turn, the Company, have demonstrated little recognition of their own culpability. Instead, Defendants have blamed the errors found in the returns audited by the IRS on: (1) having too little time to supervise Company employees; and (2) receiving inaccurate information from Company clients. As such, any assurances that Defendants have been

more closely supervising their employees and requiring more records from their clients cannot amount to sincere assurances against future violations.

## **Conclusion**

For the reasons stated above, a preliminary injunction shall issue enjoining Defendants from acting as income tax return preparers, from representing any person before the Internal Revenue Service, and from engaging in any conduct subject to any penalty under the Internal Revenue Code or any other conduct that interferes with the administration and enforcement of the internal revenue laws. In addition, the preliminary injunction shall require Defendants to mail or otherwise deliver a copy of this Memorandum Opinion and Order and the Preliminary Injunction issued herewith to their past and current clients on or before June 1, 2007; to explain to such clients that Defendants are preliminarily enjoined from acting as income tax preparers; to inform clients for whom they have filed returns in the past that they should consult another income tax preparer with respect to the advisability of filing amended returns; and to certify on or before June 8, 2007, that they have fully complied with this Order.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:  May 11, 2007

# PRELIMINARY INJUNCTION

Upon Plaintiff United States of America's Motion for Preliminary Injunction against Defendants Neal A. Reddy; Royanne Reddy; Royanne's Tax Services and Royanne & Company, Inc., it is hereby:

**ORDERED** that Defendants, individually or doing business as Royanne's Tax Service, Royanne's Tax Services, or any other name or using any other entity are preliminarily enjoined from directly or indirectly acting as income tax return preparers and are hereby prohibited from preparing, filing, or assisting in the preparing and filing of federal income tax returns, amended returns, or other related forms and documents on behalf of any person other than themselves;

**ORDERED** that Defendants are preliminarily enjoined from engaging in any conduct subject to any penalty under the Internal Revenue Code or any other conduct that interferes with the administration and enforcement of the internal revenue laws;

**ORDERED** that Defendants shall mail or otherwise deliver a copy of this Preliminary Injunction and the Memorandum Opinion and Order issued herewith to all persons for whom they have prepared federal income tax returns after January 1, 2002 and for whom they have an address and/or telephone number. Defendants shall post a copy of this Preliminary Injunction and the Memorandum Order and Opinion issued herewith at the entrance of Royanne's Tax Service or Royanne's Tax Services at 340 Main Street, Marseilles, IL 61341 and 1310 Illinois Hwy 26, Princeton, IL 61356, in plain view of anyone entering the premises. Defendants shall also post a copy of this Preliminary Injunction and the Memorandum Opinion and Order issued herewith to the website of Royanne's Tax Services located at http://www.royanne1.com. This Preliminary Injunction and the Memorandum Opinion and Order issued herewith shall remain posted at the

addresses and website identified above so long as the order is in effect. Defendants shall explain to their past and current clients that they are preliminarily enjoined from acting as income tax preparers and shall inform clients for whom they have filed returns after January 1, 2002 that they should consult another income tax return preparer with respect to the advisability of filing amended returns;

**ORDERED** that Defendants shall mail or otherwise deliver a copy of this Preliminary Injunction and the Memorandum Order and Opinion issued herewith to the clients identified above on or before June 1, 2007. By June 8, 2007, Defendants shall file with this Court – and serve upon Plaintiff – an affidavit stating, under penalty of perjury, that they have fully complied with this Order. In that affidavit, Defendants shall specifically name the clients to whom they have mailed or otherwise delivered a copy of this Preliminary Injunction and the Memorandum Opinion and Order.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 11, 2007